Watts.
1 w370
134  435

# Trustees of Jacobs *against* Bull et al.

# Jacobs *against* Bull et al.

A legacy to a child vested, but not charged on land, and payable with interest, by the terms of the will, at twenty-one, shall nevertheless be paid presently at the death of the child, should that event happen before the time of payment originally appointed. But where it is presumed from the circumstances and the condition of the estate, that the postponement was intended for the benefit of others, the time of payment will not be hastened by the death of the legatee. Nor will the payment be hastened by his death in any case when the legacy is charged upon land.

When the same individual is an executor of a will and also the trustee of a fund arising out of the estate of the testator, and receives money in contemplation of law as trustee, it is demandable from him in no other character.

APPEAL from the circuit court of *Lancaster* county.

These were two actions of *assumpsit* for money had and received, in which the facts were the same, and which were stated and agreed to be taken in the nature of a special verdict.     In the first, *Levi Bull* and *Molton C. Rogers*, trustees of *Coleman Jacobs*, were plaintiffs; and *Levi Bull, William Coleman* and *Molton C. Rogers* were defendants.     In the second, *Samuel F. Jacobs* by his guardian *Mary Jacobs*, was plaintiff; and *Levi Bull, William Coleman* and *Molton C. Rogers* were defendants.

The facts were thus stated, and questions raised in the first case.

*Cyrus S. Jacobs*, Esq. died on the 6th of May 1830, having made his last will and testament, which was on the 13th of May proved in due form of law, and letters testamentary granted by the register to *Levi Bull, Molton C. Rogers* and *William Coleman*, three of the executors named therein; *Samuel O. Jacobs* and *Coleman R. Jacobs* having previously renounced.

By the said will, *Cyrus Jacobs*, Esq. devised, *inter alia*, as follows, viz. " item, to my son, *Coleman R. Jacobs*, I will Whitehall plantation, and the woodland belonging to it, both deeded to me by *James Hopkins;* and five and three-fourths acres of church land, deeded to me by *Edward Davis;* these tracts is about two hundred and fifty-five acres, and the mills and land, about sixty-two acres, deeded to me by the *Newswanger* family; these several tracts is about three hundred and seventeen acres, be the same more or less, with all the improvements; and 32,000 dollars, to be paid in instalments of 2000 dollars a year, with interest, to him and his heirs.    Now if my said son *Coleman* takes again to drink, I will that my executors, hereafter named, take the benefit of the law made for such cases, and to take the property out of his hands for the use of him and his family."

*Coleman R. Jacobs* and *Mary* his wife, by indenture duly executed,

[Jacobs v. Bull et al.]

acknowledged and recorded, bearing date the 12th July 1831, for the causes and considerations therein expressed, conveyed to *Levi Bull* and *Molton C. Rogers*, the plaintiffs in this action, certain real and personal estate to hold for the uses and upon the trusts in the said indenture specified and contained.

On the 13th of April 1833, *Coleman R. Jacobs* died intestate, leaving a widow, *Mary Jacobs*, and issue one child, a son, *Samuel F. Jacobs*, whose guardian is the said *Mary Jacobs*, by force of the appointment in the deed of 12th July 1831 contained.

On the 23d of April 1833, letters of administration on the estate of *Coleman R. Jacobs* deceased, were in due form of law granted to his brother *Samuel O. Jacobs*.

Of the 32,000 dollars bequeathed to *Coleman R. Jacobs*, by his father, the defendants, the executors of *Cyrus Jacobs*, Esq. have paid two instalments of 2000 dollars each, with interest, viz. 2000 dollars to *Coleman R. Jacobs*, and 2000 dollars to *Levi Bull* and *Molton C. Rogers*, his trustees, the plaintiffs in this suit.

There is now remaining in the hands of the defendants, executors of *Cyrus Jacobs*, Esq. the sum of 28,000 dollars.

Two questions are submitted for the decision of the court.

1. Can the defendants, the executors of *Cyrus Jacobs*, Esq. pay over to the legal representatives of *Coleman R. Jacobs*, at this time, the whole of said sum of 28,000 dollars, or must it be paid by them in annual instalments, as directed by the will ?

2. Can the plaintiffs, the trustees of *Coleman R. Jacobs*, recover from the defendants, the executors of *Cyrus Jacobs*, Esq. in any event; or does the fund in their hands, or so much of it as, by the deed of the 12th of July 1831, is limited to the use of *Samuel F. Jacobs*, the son of the said *Coleman*, belong to him and become payable to his guardian, and the balance to *Mary Jacobs*, the widow of the said *Coleman*, agreeably to the provisions of said deed of 12th July 1831 ?

If the opinion of the court be in the affirmative, upon either of these questions, then judgment to be entered in favour of the plaintiffs, for such sum of money as the court may think them entitled to recover at this time, but if in the negative the judgment to be entered generally for the defendants.

Upon the 26th of April 1833, the court entered judgment in favour of the plaintiffs for the sum of 28,000 dollars.

Upon the same day, the defendants appealed to the supreme court, and assigned as their reason for the appeal, that the judgment of the circuit court ought to have been rendered in favour of the defendants and not of the plaintiffs.

In the second case the facts were the same, and the questions submitted to the court were—

1. Can the defendants, the executors of *Cyrus Jacobs*, Esq., pay over to the legal representatives of *Coleman R. Jacobs*, at this time,

the whole of said sum of 28,000 dollars, or must it be paid by them in annual instalments, as directed by the will?

2. Is the plaintiff entitled to recover from the defendants, the executors of *Cyrus Jacobs*, Esq. in any event, or does the fund in their hands belong to the trustees named in the deed of the 12th of July 1831, and become payable to them.

If the opinion of the court be in the affirmative upon either of these questions, then judgment to be entered in favour of the plaintiff for the sum fixed by the court, but if in the negative the judgment to be entered generally for the defendants.

Upon the 26th of April 1833, the court entered judgment in favour of the defendants.

Upon the same day, the plaintiff appealed to the supreme court, and assigned as his reason for the appeal, that the judgment of the circuit court ought to have been rendered in favour of the plaintiff for the damages claimed in the declaration, and not in favour of the defendants.

The questions were argued by *Jenkins* and *Montgomery.*

The opinion of the Court was delivered by

GIBSON, C. J.—A legacy to a child vested, but not charged on land, and payable *with interest*, by the terms of the will, at twenty-one, shall nevertheless be paid presently at the death of the child, should that event happen before the time of payment originally appointed. The rule is laid down in Mr *Roper's Treatise*, vol. 1, p. 393, with references to the cases, but without a clear and precise exposition of the reason of it. The reason and the consequences, however, seem to be that, as the estate would not be increased by further postponement, interest being demandable in compensation of delay, and as the object of the testator, evidently having respect to the circumstances and condition of the legatee, would no longer be promoted by it, no beneficial purpose could be answered by carrying into effect an arrangement adapted to circumstances which no longer exist. And the reason seems to imply this distinction, that where the postponement is presumed, from circumstances peculiar to the child's condition, to have been intended for his personal benefit, payment shall be made as soon as it is ascertained by his death, that his benefit will no longer be promoted by it; but that where it is presumed from the circumstances and condition of the estate, to have been intended for the benefit of others, the time of payment shall not be hastened by his death. In accordance with this, we find that when less interest is directed to be paid, than the legacy would make in the lands of the executors, payment shall be deferred notwithstanding the death, in order to give the estate the benefit of the difference; and the same principle governs in respect to the payment of a legacy charged on land, the time being presumed to have been postponed for the convenience of the heir or devisee; as was held in

[Jacobs v. Bull et al.]

*Feltham* v. *Feltham,* 2 *P. Wms* 271.    What then is the case stated? A father bequeaths a legacy of 32,000 dollars to his son, in annual instalments of 2000 dollars, *with interest on the principal,* and without charging it on land.    It seems, therefore, to differ from the common case of payment at twenty-one, in nothing but the appointment of several days of payment instead of a single one.   The clause empowering the executors to take possession of the real estate given, in addition to the legacy, in case the son should relapse into habits of inebriety, instead of making room for an exception, proves that the protraction of payment was intended to protect him from the temptation to squander incident to the possession of large sums of ready money, and brings the case more emphatically within the reason of the rule; to say the least, it cannot make a difference unfavourable to it.   By the death of the son, then, the unexpended residue became presently payable to those who have succeeded to his rights; and whether by the executors to his trustees under the deed of assignment, or by the executors directly to the guardian of his infant, the party beneficially entitled under the deed, is all that remains to be determined.   It is said that as the money is, in point of fact, as much in the hands of the executors as it is in those of the trustees, and as any further execution of the trust is rendered unnecessary by the death of him who created it, payment may be had from the executors without the intervention of the trustees.   But as money can pass only by delivery, it must necessarily have been taken to have been in the hands of the two executors who had it in fact, in their character of trustees, in order to protect it from the subsequent debts of the legatee, against which it was the design of the trust to guard it; and having been received by them in contemplation of law as trustees, it is demandable from them in no other character.   Whatever, then, may be the right of the guardian to possession of the fund, it can not be enforced in this action.

Judgment in each suit affirmed.