[ PHILADELPHIA, JANUARY 27TH, 1840. ]

## ASTON'S ESTATE.

#### APPEAL.

1. An agreement between two executors, that one should receive two-fifths of the commissions charged by the other, who settles a separate account, is not illegal, if it appear that the executor receiving the two-fifths, transacts part of the business of the estate.

2. A. and B. were executors of the will of C. A. died, and his administrators settled a separate account, in which they charged five per cent. commission on the money that passed through the hands of A., and claimed a balance to be due to him by the estate. This account was duly confirmed. Afterwards B. died, and his administrator settled an account, in which he charged the estate with the balance due upon the account settled by A.'s administrators, together with interest upon it. This account was referred to auditors, before whom the administrator of A. appeared and testified, that by agreement between A. and B., the latter was to receive two-fifths of the commissions to be charged by A., and that he was willing to endorse on the foot of the account filed by him, a declaration, that of the balance due, B.'s estate was entitled to a certain proportion. The auditors allowed the administrator of B. credit for this proportion with interest, and the Orphans' Court confirmed the report : *Held,* that there was no error in this.

3. A testator authorised and directed his executors, and the survivor of them, to lay out a certain tract of land into lots, and to sell and dispose of the same, and he gave the proceeds to certain nephews and nieces, who were also residuary legatees, to be equally divided between them. The executors sold the lots and received the proceeds : *Held,* that these proceeds were received by them as trustees, not as executors, and therefore ought not to be brought into the administration account.

4. A testator devised a certain ground-rent to A., B. and C. (whom he afterwards appointed executors,) and their heirs, and in case of the extinguishment of the ground-rent agreeably to a provision in the deed, he directed that the principal thereof should be paid, and go to the said A., B. and C. and the survivors and survivor of them, and the executors and administrators of such survivor, in trust to invest the same upon good security, &c., and to pay the interest to his nephew for life, and after his death for the use of his children. A. renounced ; B. and C. received letters testamentary, and acted as executors and trustees. B. died, and afterwards C. died, having shortly before his death received the principal money of the mortgage, and invested a part of it ; leaving a balance at his death uninvested. D. became administrator to the goods of C. and received the balance : *Held,* that he received it as trustee, and not as administrator of C., and therefore that he was not chargeable with it as administrator, and could not, *as such,* settle an account with the cestui que trust. And, *it seems,* that it was his duty to invest the balance in a reasonable time, in conformity with the directions in the will ; and having deposited the money in a bank, though to his credit as administrator, and though he had not made use of it, he was chargeable with interest upon it.

(Aston's Estate.)

THIS case came before the Court on an appeal from a decree of the Orphans' Court of the county of Philadelphia, in the matter of the accounts of Zaccheus Collins, surviving executor of the will of George Aston, deceased, as exhibited by Daniel Parker, administrator of the goods, &c. of the said Zaccheus Collins.

An appeal from a decree of the Court of Common Pleas of the City and County of Philadelphia, in the matter of the accounts of Daniel Parker, administrator of Zaccheus Collins, deceased, who was trustee of George Aston, a minor, under the will of the said George Aston, deceased, was argued at the same time.

The circumstances of the case appeared to be as follows.

George Aston, the testator, by his will, dated the 24th day of August, 1816, made the following devises and bequests, (*inter alia.*)

"I give and devise unto Zaccheus Collins, Elliston Perot, and Thomas Savery, all of the city of Philadelphia, and their heirs, all that my yearly rent-charge or ground-rent, of seven hundred and sixty-five dollars, lawful silver money of the United States of America, payable by four equal quarterly portions, on every the first day of the months of January, April, July and October, in each and every year, forever, free from all deductions for taxes, issuing out of and charged and chargeable upon all those two lots of ground with the messuage and buildings thereon erected, now in the tenure of George Myers, situate late in the Northern Liberties, now in Penn Township, in the county of Philadelphia, as mentioned and described in the deed of conveyance for the same, made and executed by me, to the said George Myers, dated the nineteenth day of September, 1812, and all the rights, remedies, incidents and appurtenances, whatsoever, thereunto belonging; and in case the said George Meyers, his heirs or assigns, should extinguish the said ground-rent, by purchase agreeably to a provision in the said deed of conveyance contained, then the purchase moneys therefor shall in lieu of the said ground-rent, go and be paid to the said Zaccheus Collins, Elliston Perot and Thomas Savery, and the survivor and the survivors of them and the executors and administrators of such survivors: and I do hereby give and bequeath to the said Zaccheus Collins, Elliston Perot and Thomas Savery, their heirs, executors and administrators, all my twenty shares of the capital stock and estate of the company lately established in Philadelphia, for granting life annuities, and all the dividends, proceeds and profits thereof; to have and to hold, receive and take the said ground-rent of seven hundred and sixty dollars per annum, and in case it should be extinguished as aforesaid, then in lieu thereof the purchase moneys for the same, mentioned in the aforesaid deed of conveyance being twelve thousand six hundred and sixty-six dollars and sixty-seven cents; and also, all the aforesaid twenty shares of the capital stock

and estate of the said company for granting life annuities, with all the rights, remedies, dividends, proceeds and profits ·thereof, unto them the said Zaccheus Collins, Elliston Perot and Thomas Savery, and the survivor and survivors of them, and the heirs, executors, administrators and assigns of such survivors forever, in trust nevertheless, to pay the net income, dividends and profits thereof as they shall receive the same, into the hands of my nephew George Aston, junior, and son of my late brother Peter Aston, deceased, for his use and benefit, from time to time, for and during all the term of his natural life, without being liable in any way or manner whatever, to his debts, contracts or engagements; and in case the said ground-rent should be extinguished as aforesaid, then as for and concerning the purchase moneys to arise therefrom, in trust, to place the same out at interest, upon good and sufficient land security, or to invest the same in good and secure stock, or otherwise to manage and improve the same as they, my trustees, in their discretion may deem beneficial; and to take and receive the interest and income thereof, as it may accrue and grow due, and pay over the same interest and income together with the dividends and income of the said other trust property, into the hands of my said nephew George Aston, junior, for his use and benefit from time to time, for and during all the term of his natural life, without being liable in any way or manner whatever to his debts, contracts or engagements; and from and after the death of my said nephew George Aston, junior, then as for and concerning the said ground-rent of seven hundred and sixty dollars per annum, and the purchase moneys thereof, in case the same should be extinguished, and also, the said twenty shares of the capital stock and estate of the said company for granting life annuities, and the dividends, profits, income and proceeds thereof, in trust, to and for the only proper use, benefit and behoof of all and every the children of my said nephew George Aston, junior, if he shall marry and have any children, their heirs and assigns forever, to be equally divided between them, part and share alike as tenants in common; and in case my said nephew George Aston, junior, should die without leaving a child or children to survive him, then in trust to and for the only proper use, benefit and behoof of all and every the children of my aforesaid niece Ann Warder, junior, born and to be born, their several and respective heirs and assigns forever, equally to be divided among them part and share alike as tenants in common; and whereas, I have not as yet fully completed the payments for the said twenty shares of the capital stock of the said life annuity company, now it is my will and I do hereby order and direct, authorise and empower my executors to pay the remaining instalments of the subscription moneys for the said twenty shares of the stock of said company, out of the moneys which may form part of my residuary estate, so as fully to

(Aston's Estate.)

complete the payments for the said stock, in case I shall not in my lifetime have completed the same.

And I do hereby make, constitute and appoint the aforesaid Zaccheus Collins, Elliston Perot and Thomas Savery, executors of this my last will and testament."

By a codicil to his will he made the following dispositions.

"Whereas, in and by my aforegoing last will and testament, I gave and devised to my niece Hannah Madeira, her heirs and assigns forever, all that my lot or piece of land containing five acres or thereabouts situate on the Ridge Road, and late in the Northern Liberties, now in Penn Township, in the county of Philadelphia, adjoining lands of John Wistar, David Evans, William Hamilton and others, with the appurtenances. Now I do hereby revoke, annul, and make void that devise, and the same shall cease and be of no force or effect. Item, I do now hereby order and direct, authorize and empower my executors and the survivor and survivors of them, to divide and lay out, the said lot or piece of land containing five acres or thereabouts, situate on the Ridge Road in Penn Township aforesaid, into such suitably sized building lots as they may think proper, and with or without alleys, ways, passages and water-courses as they may think expedient in their discretion; and after having so divided and laid out the same into such small building lots as aforesaid, then I do hereby further order and direct, authorise and empower my executors in my aforegoing will named, and the survivor of them, to bargain and sell and absolutely to dispose of all and every such building lots of ground, each lot separately by itself, unto any person or persons, and for the best price that can reasonably be obtained for the same, either at public or private sale or sales in their discretion, and to sign, seal, execute and acknowledge and deliver, in due form of law, all and every such deeds, conveyances and assurances in the law, as shall be necessary for granting, conveying and assuring all and every said building lots of ground, and the absolute fee simple and inheritance thereof, and of every part and parcel thereof unto the purchaser and purchasers thereof, his or their heirs and assigns forever; and I give and bequeath all and every part of the moneys proceeding from the aforesaid sales unto my nephews and nieces, namely, Ann Warder, jr., (wife of Jeremiah Warder, junior,) and George Aston, junior, (the two only children of my late brother Peter,) and Esther Madeira, Maria Madeira, Sarah Madeira, Hannah Madeira, Catharine Madeira, George A. Madeira, Jacob Madeira, Peter Madeira, and William Jones Madeira, (the nine surviving children of John Madeira and my sister Mary, his wife,) to be equally divided among them, part and share alike."

Elliston Perot, one of the executors named in the will, renounced; and letters testamentary were granted to Savery and Collins.

Thomas Savery died in 1819, without having made any settlement with the estate. His administrator, Thomas Stewardson, filed an account on the 25th of September, 1821, of the transactions of his intestate, with the estate of Aston, in which a balance was claimed to be due by the latter estate to the estate of Thomas Savery, of one thousand five hundred and thirty-seven dollars and seventy-two cents. There was no claim for commissions, or other compensation in this account; which was confirmed in due course in the Orphans' Court.

On the 19th of September, 1827, Zaccheus Collins, as surviving executor of George Aston, settled an account with the estate in the Register's office, in which he claimed a balance to be due to him of seventy-two dollars and forty-eight cents. In a note to this account, the executor stated that certain sums, amounting to five thousand two hundred and ninety-eight dollars and seventy-six cents, were received by him, and paid over to his late co-executor, Thomas Savery, to be accounted for by him. In a second note was the following: " The above-named executor defers his claim for compensation, until a supplementary account is rendered." In a third note was the following: " This account is independent of that part of the will which regards the trust estate."

Zaccheus Collins died in June, 1831; and Daniel Parker became his administrator; who on the 28th of June, 1832, filed another account, headed—

" The estate of George Aston, deceased, in account with the estate of Z. Collins, executor and trustee, as exhibited by Daniel Parker, administrator of the said Zaccheus Collins, deceased."

In this account the administrator charged the estate with the balance of one thousand five hundred and thirty-seven dollars and seventy-two cents, due to the estate of Thomas Savery, the co-executor deceased, and with interest thereon from the 6th of October, 1820, to the 2d of April, 1828, and with commission at 5 per cent. on receipts, including those from sales of lots; and he included in the account the proceeds of sales of lots in Penn township, and the principal of the ground-rent of seven hundred and sixty-five dollars redeemed.

The account thus settled was referred to auditors, who made a a report; of which the following are extracts.

" Thomas Stewardson, the representative of Thomas Savery's estate, appeared before the auditors, and testified that the estate of

Zaccheus Collins was entitled to receive, out of the balance appearing to be due to Thomas Savery's estate, one thousand and fifty-five dollars and sixty-seven cents.    That in the lifetime of Zaccheus Collins and Thomas Savery, an agreement was made between them, by which Collins was to receive *two-fifths* of the whole amount of commissions that should be charged by Savery.    He further stated, that if it were deemed necessary, he would endorse at the foot of the account filed by him, a declaration that, of the balance due, Savery was only entitled to four hundred and eighty-two dollars and five cents, and Collins one thousand fifty-five dollars and sixty-seven cents.

The exceptions taken to the account before the auditors, resolved themselves principally into two : first, that the amount of commissions charged was exorbitant and oppressive ; and second, that the balance appearing to be due to the estate of Thomas Savery on the account filed by Stewardson, and the interest charged thereon, ought not to have been brought into the account."

On these points the auditors reported as follows :

" That the commissions charged, and allowed by the register, are by no means exorbitant, and scarcely sufficient to remunerate for the trouble actually incurred in the management of the estate. Much labour was expended by Zaccheus Collins in his lifetime for the benefit of the heirs of George Aston; and what is a reasonable commission therefor, must necessarily depend upon the particular circumstances of the case.    No general rule has ever been established on the subject of commissions, and from the nature of things it cannot be done.    Five per cent. is the compensation usually allowed ; but in some instances it is less, and not unfrequently goes beyond that sum. Five per cent. is charged in the account exhibited by Daniel Parker, and we are of opinion that it is by no means too much.

So far as respects the first item of discharge in the account of Daniel Parker, the balance appearing to be due to Savery's estate on the account exhibited by Stewardson, we are of opinion, that only so much of it as actually belongs to the estate of Collins should be introduced into the account.    That portion, according to the admission of Savery's own representative, is one thousand and fifty-five dollars and sixty-seven cents.    The difference, therefore, between this sum and the whole balance appearing to be due to Savery's estate, to wit, four hundred and eighty-two dollars and five cents, must be stricken out of the account. The latter amount is not, in fact, pretended to have been paid, but is simply retained at the request of the representatives of Savery's estate, to be handed over in case it is allowed by the Court.    In other words, it is not introduced as a payment, but retained to meet a payment, and is still outstanding."

(Aston's Estate.)

" Your auditors have stricken out of the account so much of the balance appearing to be due to Savery's estate on the account settled by Stewardson, as belonged in fact to *Savery*, and have retained therein so much thereof as is proved to have belonged to the estate of *Collins*. That amount is one thousand and fifty-five dollars and sixty-seven cents, which, with interest thereon from the 6th of October, 1820, to April 2d, 1828, (when funds came into the hands of Zaccheus Collins,) is one thousand five hundred and twenty-eight dollars and ninety-three cents. Deducting this sum, therefore, from the whole balance charged in the account as due Savery's estate, and interest thereon, to wit, seven hundred dollars and one cent, the balance in the hands of the administrator of Zaccheus Collins is increased from one thousand four hundred and ninety-three dollars and ninety-seven cents, the amount stated, to twenty-one hundred and ninety-three dollars and ninety-eight cents. This sum, we are of opinion, should be paid to James Dunlop, administrator *de bonis non* of Aston's estate, to whom the estate of Thomas Savery, must look for the amount due to it."

Exceptions were filed to this report on the part of the administrator *de bonis non*, and of George Aston; and on the 26th of November, 1834, the accounts were remitted to the auditors, with instructions " to reduce the commissions to three per cent, and to strike out of the accounts all items on either side relating to trust estates, or moneys, and to correct, settle and adjust on the same principles the accounts of the estate of the said George Aston, deceased, heretofore filed and exhibited by Thomas Savery, one of his executors, or by the representatives of the said Thomas Savery; without prejudice to the question, whether any part of the balance (if any) appearing on such accounts to be due from the estate of the said George Aston, deceased, ought to be allowed as an item in the accounts filed and exhibited by the said Daniel Parker, as above; and also without prejudice to the question, whether the said accounts filed by Thomas Savery, or his representatives, ought to be opened."

The auditor reported upon these points, as follows:

" That, according to the directions of the Orphans' Court, he has stricken out of the account of the settlement of the estate of the said George Aston, all moneys which he conceives to belong to the trust estate, or which in any nature partakes of that character. He has also reduced the commissions on the same, so far as Zaccheus Collins's estate is concerned, to *three* per cent. ; and has accordingly annexed to this report, an account settled on these principles. On the account of Savery, (as exhibited by his representative, Stewardson,) the commissions have been suffered to remain as they stood on the settlement of the account, no reason having been shown to

(Aston's Estate.)

the satisfaction of the auditor, why they ought to be reduced. The direction of the Court to reduce the commissions, could not be considered as applying to this account, inasmuch as it was never submitted to, nor examined by the Court, and the nature of the trouble and responsibility it involved, wholly unconsidered.

On examining all the accounts, and comparing them with the directions contained in the will of George Aston, deceased, it will appear, that there is nothing contained in the accounts which partakes of the nature of trust estate, save the items relating to the accounts of Catharine and Mary Madeira, and the amount of a ground-rent of twelve thousand six hundred and sixty-six dollars and sixty-six cents, specifically devised in trust for the benefit of George Aston, Jr. The amount of this ground-rent was subsequently paid off, and a part of the proceeds reinvested on a mortgage on the estate of William H. Todd, Esq., by Zaccheus Collins in his lifetime. The proceeds of this sale have been stricken out of the account, and the auditor has settled the estate without any reference whatever to the ground-rent.

It further appeared, that George Aston devised a house and lot in Chambersburg, and a large lot of ground in Penn township, to his executors, with directions to sell the property, and divide the proceeds among certain persons specifically named in his will. This was done by Zaccheus Collins, one of the executors, and the proceeds of sale brought into his account as executor. The propriety of this was objected to by Mr. Meredith, who contended that the character of the devise made it trust estate; which position was denied by Mr. Rawle. On reflection, the auditor has refused to strike these transactions out of the accounts, conceiving that an executor who disposes of real estate devised to him as such, with directions to distribute the proceeds, does it in his capacity of executor, and receives the proceeds in the same character. He must therefore account for it in the settlement of his administration of the estate, and no where else."

To this report the following exceptions were filed in the Orphans' Court, by James Dunlop, Esq., administrator *de bonis non.*

" 1. That the auditor has not reduced the commissions on Savery's account to three per cent.

2. That part of the balance appearing upon the account of Thomas Savery, one of the executors of George Aston, deceased, is allowed to stand in the present account as an item of charge against the estate of the said George Aston, no part of the said balance being due from the said estate to the present accountant or his testator, nor having been paid by the present accountant or his testator.

3. That the auditor has intermixed the proceeds of the Cham-

bersburg and Penn Township lots with the general account of the administration of the estate, although they were trust estates, or if not so, were devised to the executors to be sold, and the proceeds to be specifically divided among certain persons; and as it appears by the auditor's report, that a balance of upwards of two thousand dollars is still due and to be paid, of the said proceeds of the Penn Township lots, to the persons respectively entitled thereto, a separate account ought to have been stated of the said proceeds, and the distribution thereof.

4. That the auditor has not allowed interest on the sum of two thousand and sixty-nine dollars and thirty-two cents, being the amount of the proceeds of the Penn Township lots received by the executor on the 2d of April, 1828, and which the auditor reports to be still due to the parties entitled under the bill.

5. That the auditor has allowed interest on the respective sums charged as commissions.

6. That although the auditor has intermixed the proceeds of the Penn Township lots with the general account of the estate, he has allowed the sum of one hundred and forty-four dollars and nineteen cents (stated to have been paid by Savery on account of the said lots) to be retained out of the said proceeds, by Mr. Collins or his representative, although the same was never paid by Mr. Collins or his representative; and Mr. Savery received rent of the said lots amounting to three hundred and sixty dollars, leaving a balance of two hundred and fifteen dollars and eighty-one cents, which, with interest, remains due from his estate to the persons entitled to the proceeds of the Penn Township lots.

7. That the auditor has allowed the ground-rent of George Meyers to stand in Savery's account; although the same was expressly devised in trust."

The Orphans' Court, after argument, overruled the exceptions, and confirmed the report; upon which this appeal was taken.

---

In the matter of the *trust* estate, the proceedings were as follows:

On the 14th of February, 1835, James Dunlop, Esquire, trustee of George Aston, a minor, presented a petition to the Court of Common Pleas, setting forth:—

"That by the will of George Aston, deceased, the grandfather of the said George Aston, a minor, certain estate and effects were devised and bequeathed to Zaccheus Collins and Thomas Savery, in trust, for the father of the said George Aston, a minor, and his heirs, the said George Aston, a minor, being his only child and heir at law. That the father of the said George Aston, a minor, died about the year 1817. That after his death, the said Savery and

Collins, trustees as aforesaid, received large sums of money on account of, and had the management of the said trust estate. That the said Thomas Savery is since deceased, and that letters of administration of his estate have been duly granted to Thomas Stewardson and William Savery. That the said Zaccheus Collins is also deceased, and letters of administration of his estate have been duly granted to Daniel Parker. That the above named James Dunlop, was duly appointed trustee of the said George Aston, a minor, in regard to the before named trust estate and effects, by this honourable Court in the year 1832.

Your petitioner therefore prays that a citation or citations may issue, directed to the said Thomas Stewardson and William Savery, and also to the said Daniel Parker, commanding them to file and settle the accounts of their respective intestates, of and concerning the trust estates and effects aforesaid, and the management thereof."

A citation issued accordingly; in pursuance of which an account was filed by Daniel Parker, as administrator of Zaccheus Collins, of the transactions of the latter with the trust estate.

The account was referred to auditors who made a report, the material parts of which are as follows:

"On examining the account, and comparing it with the vouchers and evidence produced, the auditors have come to a conclusion, the result of which is stated in the account hereunto annexed. The commissions charged by the administrator on the settlement of the trust, have been reduced from *five* to *three* per cent.

The auditors were also requested by Mr. Meredith to bring into the account the proceeds of certain lots, situate in Penn Township, which were devised by George Aston to his executors, with directions to sell the property, and divide the proceeds among certain persons enumerated in his will. This was done by Zaccheus Collins, one of the executors, in his lifetime, and the proceeds of the sale carried into his account as executor. Mr. Meredith contended that this course was erroneous; that the nature of the devise made it trust estate; and that, therefore, it ought to be brought into an account as trustee, and should not form a portion of the general administration account. The auditors, however, are of a different opinion, and have refused to bring into this account the proceeds of the Penn Township sales, for reasons which it is not difficult to understand. The real estate devised by George Aston, was devised to his *executors*, (specially naming them as such,) with directions to sell and divide the proceeds: they sold in their character as such, and must have received the funds in the same capacity in which they sold. This can be done only by charging them with the proceeds in the general account of the settlement and administration of the estate: and not, as is supposed, by compelling the executors to

(Aston's Estate.)

file and settle a distinct account as trustees.   For these reasons, the auditors refuse to charge the accountant with the proceeds of the Penn Township sales.

The auditors were also asked to charge the accountant with interest on the balance of the funds remaining in his hands, because, as was alleged, he ought to have invested the amount, and made it productive to the minor. It appeared, however, from the evidence produced, that all the funds belonging to the estate were deposited by the administrator of Mr. Collins in the Mechanics' Bank, and that the whole balance due upon this account has remained in that institution, untouched by Daniel Parker.   It was deposited by him in his capacity of administrator, and went to his account as such. Under these circumstances, the auditors conceive, that they are not bound to charge the accountant with interest on the balance reported to be in his hands, inasmuch as he derived no benefit whatever from the employment of the fund.   Had the deposit been to his private account, it might be considered as giving him a credit in bank to the extent of the sum deposited; but when he never used the money, and was always in a condition to pay over the balance at any time it might be demanded, it would be inequitable to visit him with interest.   The auditors, accordingly, refuse to charge the account-ant with interest on the balance reported to be in his hands."

To this report the following exceptions were filed.

1. " Because the auditor has refused to charge the accountant with the *cestui que trusts*' share of the proceeds of the Penn Town-ship lots, mentioned in the report of the auditor.

2. Because the auditor has refused to charge the accountant with interest on the sum of $2,666 66, from April, 1831, to the present time, the said sum being part of the trust fund received by the accountant in April, 1831, and which he was by the terms of his trust bound to invest."

The Court of Common Pleas overruled these exceptions, and made a decree in conformity with the report; from which decree an appeal was taken to this Court.

These appeals were now argued together, by Mr. *Meredith*, for the appellant, and Mr. *Rawle*, for the appellee.

The opinion of the Court was delivered by

ROGERS, J.—On the appeal from the Orphans' Court, the atten-tion of this Court has been particularly directed to the second exception, the first having been abandoned by the counsel.   This exception refers to the allowance of the sum of $1,055 67 cents with the interest.   Thomas Savery having settled his ad-ministration account on the estate of George Aston, a balance of $1,537 72 was decreed in his favour.   No appeal was taken

from this decree, and it became a debt owing by the estate of Aston, to the accounting executor; and on his death was assets in the hands of his administrator. The only way in which it can come properly into the administration account of the surviving executor of Aston's estate, is on the footing of a debt due by the estate, which had been paid or otherwise discharged or satisfied in whole or in part. If the debt had been paid by him, he would be entitled to a credit for the payment; and this would seem to be admitted. Or if the administrator of Savery, the deceased executor,, has discharged the estate, or otherwise admitted satisfaction of the. claim, it is the same thing, so far as the representatives of Aston's estate are interested. The administrator of Collins, it is true, has not actually paid the money to the administrator of Savery, yet the latter is willing to admit, that he has received part payment or satisfaction of the debt to the amount of $1,055 67 cents. Thomas Stewardson, who was the administrator of Thomas Savery, was examined before the auditors, and testified, that the estate of Zaccheus Collins, was entitled to receive out of the balance appearing to be due to Thomas Savery's estate $1,055 67 cents; and that in the lifetime of Zaccheus Collins and Thomas Savery, an agreement was made between them, by which Collins was to. receive two-fifths of the whole amount of commissions that should be charged by Savery. He further stated, that if it was deemed necessary, he would endorse, at the foot of the account filed by him, a declaration, that of the balance due, Savery was only entitled to four hundred and eigthy-two dollars and five cents, and Collins to one thousand and fifty-five dollars and sixty-seven cents. After such an acknow-ledgment, and such a declaration, and partioularly if followed by the endorsement, which the administrator of Savery offered to make at the foot of the account, it is difficult to perceive the injury which by possibility can be done, by permitting it to stand as a charge against the estate, in the administration account of the surviving executor. By the former decree, the estate was fixed for the amount decreed; and all that can be reasonably required, is, that the estate of Aston should be discharged from the payment of the debt ascer-tained by the former decree ; and whether this is done by an actual payment, in the form of the acknowledgment of satisfaction, as to those interested is perfectly immaterial. The only interest they have is, that they should be discharged from all claim on the part of the administrator of Savery; and it is obviously indifferent to them, to whom the money, for which the estate is bound, should be paid. If a suit should hereafter be brought to recover the debt, by the admin-istrator of Savery, it is plain that he would be estopped by his admission and express consent, that this should be credited to the administrator of Collins. But it is contended, that the agreement between Collins and Savery, is against the policy of the law. All the terms of the agreement are set out; and that it was, (as is sup-

posed by the counsel,) an agreement that Savery was to do all the labour, and incur all the responsibility, does not certainly appear. Nay, as to part, the reverse was the fact, for the auditor reports, that much labour was expended by Zaccheus Collins, in his lifetime, for the benefit of the heirs of George Aston. This does not look like a disposition to avoid the responsibility; and the settlement of the account by Savery, is very inconclusive proof of it. There are many reasons which may render a separate account a prudent measure, without resorting to an imputation of a design to avoid a proper degree of responsibility. Indeed, the counsel disclaims all intention to impute any corrupt understanding between these parties, who are acknowledged to have been gentlemen of the most respectable standing and character. Enough does not appear to raise the question, which has been so earnestly pressed by the counsel for the appellant. If this were a case between the executors themselves, and it appeared that one did all the work, and incurred all the responsibility, there would perhaps be but little difficulty in holding, that an agreement made for such purposes and objects, was without consideration and void. But in this matter, the estate has no interest; for the number of the executors makes no difference in the rate of commission. The Court makes an allowance for the trouble of doing the whole business. If the trouble of the executors has been unequal, as is generally the case, they should do justice among themselves by assigning to each a share of the whole allowance proportioned to his trouble; or if they choose to divide it equally, it is their own concern, and they may settle it as they please. *Walker's Estate*, (9 *Serg. & Rawle*, 226.) If hereafter a case should occur, where it was apparent that the agreement was made for the corrupt purpose of avoiding responsibility, it would be a fraud, and on that ground, we would allow no commission whatever. But that is not this case, for the commissions have been already allowed, on the confirmation of the former administration account, and are not now open for examination. Besides, fraud is not pretended; in which case only would we be justified in withholding a proper compensation for the services rendered the estate by the acting executor. If the principal is due, it follows as a consequence, that the interest is due also. Interest is an incident to a decree or judgment for money.

There is something in the third exception. It was ordered by the Orphans' Court, that the accounts should be referred to an auditor, and with instructions to strike out of the accounts all items on either side, relating to the trust estates, or moneys, &c. This the auditor refused to do as to part, conceiving that they did not partake of the character of trust estates. The testator devised a house and lot in Chambersburgh, and a lot of ground in Penn Township, to his executors, with directions to sell the property, and divide the proceeds among certain persons specifically named in the will. The auditor

(Aston's Estate.)

was of the opinion, that this property belonged to the administration account, because an executor who disposes of real estate, does it in his capacity of executor, and receives the proceeds in the same character.   It matters not, to the validity of the exception, that the residuary legatee, and the *cestui que trust,* are the same individual. It may be mere form here, but in many cases it is one of substance. The admixture of accounts, in their nature different, is the prolific parent of error, and may sometimes be used as a cover to fraud. For this reason, it is essential to the furtherance of justice, that such accounts should be kept separate and distinct.   This was a trust in which the testator set apart certain portions of his real estate, for certain purposes, from the general mass of his estate.   If any other persons than the executors had been named, to execute the trust, it could form no part of the administration account, unless the property specifically devised was taken for the payment of the debts.   It is a confidence reposed in them, that they will apply the property faith-fully, and according to the directions of the will; and it is not easy to see, why the appointment of the same persons as executors and trustees, should make any difference in their obligations or duties. It is not necessary to call them trustees, to invest them with this character, as this must depend upon the nature of the duties which they have to perform.   They are entitled to compensation in a two-fold character, as trustees and executors; and when the recipients of the testator's bounty are different persons, this may be of some consequence, for it would be obviously wrong, to throw the expense attending the management of the trust, on the residuary legatees, which would be the effect of the decision of the auditor.   And this would be clear, and the injustice apparent, where an estate was given in trust to one, and the residue to another, and where the control of the trust fund would be distinct and independent of the general administration.   All the services which may be rendered, in furtherance of the trust are exclusively for the benefit of the *cestui que trusts,* and the expenses should be paid by them, and not by those who derive no benefit from them.   As regards the fund, he acts as trustee: committing the trust to the executor, *eo nomine,* does not make him less a trustee.   If the beneficiaries are properly *cestui que trusts,* the person to whom the legal estate is given for their use and benefit, by whatever name he may be called, must act as a trustee strictly, and in no other character whatever.   In the *Trustees of Jacobs* v. *Bull,* (1 *Watts,* 370,) the executors were held accountable as trustees, although named in the will as executors.

This disposes of the first exception to the trust account, as well as to the exception to the administration account.   The account to which the second exception applies is the account of Z. Collins trustee, as exhibited by Daniel Parker, his administrator.   The second exception is the refusal to charge the accountant with the interest on the sum of $2666 65, part of the trust fund.   It strikes

me, that in this account, Daniel Parker is neither chargeable with the principal nor interest. The money arises out of certain ground-rents devised to the executors, in trust for certain persons and purposes, specified in the will, in which the testator provides, that if the said ground-rents should be extinguished by purchase agreeably to a provision in the deed of conveyance, then the purchase-money therefor shall, in lieu of the said ground-rent, go and be paid to the said Zaccheus Collins, Elliston Perot and Thomas Savery, and the survivors and survivor of them, and the executors and administrators of such survivor. The contingency to which the testator refers has happened; for Daniel Parker is the administrator of the surviving executor Collins, and as such is in possession of the money, as a trustee of Aston, and not as the administrator of Collins.

When the same individual is an executor of a will, and also the trustee of a fund arising out of the estate of the testator, and receives money in contemplation of law as trustee, it is demandable from him in no other character. *Trustees of Jacobs v. Bull,* (1 *Watts,* 370.) Where the same hand is to pay and to receive, the transfer is made by operation of law. It was not necessary to the validity of the transfer, that Daniel Parker should make a declaration, or do any act to the effect that he treated the money in his hand as belonging to him in his character as trustee. This the law does for him; and as it clothes him with the power, it at the same time throws upon him all the responsibility of a trustee. To have handed the money across the table as administrator, in order to receive it back as trustee, would have been an idle and useless ceremony. *Siter's case,* (4 *Rawle,* 483.) The trust money passed into the possesion of Daniel Parker, as the trustee of Aston, in the year 1832, and it was his duty to invest it in a reasonable time, as directed in the will. Instead of pursuing this course, all the funds belonging to the estate including the trust funds, were deposited by the administrator, in the Mechanics' Bank: and the whole balance due upon the account according to the report of the auditor, remained untouched by General Parker. It imports but little, in which character the money was deposited; as the fund, according to legal construction, was in his hands as a trustee of Aston, and it was his duty to invest it, as directed by the testator. Nor can he, under such circumstances, claim an exemption from liability merely because he has not used the fund for his own benefit. The ground of liability is the failure to perform a duty, imposed on him by the will of Aston, of which he is the trustee, by an investment of the fund for the benefit of the *cestui que trust.* Although then, we are of the opinion, that General Parker may be liable for the principal and interest, in another proceeding, yet it cannot, with any propriety, enter into this account. If we should allow the charges in this proceeding, it would be at the expense of the estate of Collins; whereas the delinquency, if any, was by Parker, as trustee of

(Aston's Estate.)

Aston's will, and not as administrator of Collins.   And certainly, as far as regards this, Collins in his lifetime was guilty of no default whatever.   To reach this item, it will be necessary to cite him to account in the capacity of trustee, when he will be chargeable with the amount of the trust fund in his possession, and under his control, and also with the interest, unless he shows special reasons to justify his failure to make the necessary investment.

This disposition which we intend to make of these accounts, will render unnecessary any expression of opinion on the fourth exception.   If the question should again arise on the report of the auditor, to whom we intend to refer these accounts, it may then be considered with a better prospect of doing justice to the parties.   The sixth exception, and also the allegation that double commissions have been charged, are also referred to the auditor.   This, if the facts are as stated, is so clearly erroneous, that there will be no difficulty in making the necessary correction.

Decree accordingly.