## Parke's Estate

*W. L. Pace, C. P. Price* and *J. H. Price,* for petitioners; *Kelly & Kelly,* contra.

SMITH, P. J., February 6, 1933.—On September 17, 1932, a citation was directed to all parties interested under the will of W. G. Parke, upon the affidavit and petition of the First National Bank of Pittston, Pa., sole surviving executor and trustee under decedent's will, joined in by all respondents except Norman H. Parke, who is sui juris, and Sue M. Strous, who is guardian ad litem of certain minors.

To the petition Norman H. Parke filed preliminary objections in the nature of a demurrer and this is now our subject of consideration and decision.

The prayer of the petition is for a rule "to show cause . . . why the First National Bank of Pittston should not file a final account as the sole executor of the W. G. Parke estate, and cause to be distributed to it as sole surviving trustee under the will of said testator, in kind, all of the unconverted coal lands, undivided fractional interests, coal leases, real estate, securities and property of said estate for administration, in the form of said trusteeship, for the benefit of all the parties interested therein, in accordance with law and the terms of the will of said testator", giving as a reason for such action that "the remaining part of said estate other than and not converted into money consists of (a) The nine fortieths interest owned by the testator at the time of his death in 120 acres of coal lands known as the Herbine Tract in Cass Township, Schuylkill County, appraised in the inventory at $12,900; (b) A one half interest owned by said decedent at the time of his decease in coal lands known as the Lytle Tract, situated in Cass Township, Schuylkill County, appraised in the inventory at $28,330; (c) 500 shares of the capital stock of the Cherry River Boom and Lumber Company; (d) Certain real estate in the City of Wilkes-Barre, and the Borough of Kingston, Luzerne County, and elsewhere, having a fair market value not exceeding $100,000; and (e) Bonds and stocks": that "because of the extremely unfavorable business conditions that have prevailed during the past 3 years they [the petitioners] have been unable (except at great loss and sacrifice to those interested in said estate) to convert into money, as contemplated and provided in the will of said testator, the coal lands and coal leases, real estate, and other property of said estate hereinbefore designated and referred to"; that the order prayed for is necessary to "further conserve the unconverted assets and resources of said estate and promote the best interests of those entitled thereto: the five life tenants of the income of said estate . . . who are entitled, during their natural lives to the net income from their respective shares therein, together with those of the remaindermen who have arrived at the age of 21 years."

The petition quotes from said will as to such beneficiaries the following: "After the death of my wife Helen G. Parke, I will and direct that my Executors convert all my property into money and divide said money into six equal shares, the net income from each of said shares to be paid to each of my said children, Elizabeth, Norman, Helen, Grier, Anne and Bosworth, during their natural lives." Here follow directions for advancements to each in their lifetime to be deducted from such payments, not necessary to quote here.

In the second paragraph of the demurrer it is alleged: "That the First National Bank of Pittston, as surviving executor, cannot legally file a final account and turn over unconverted property to itself as trustee, in kind, but must sell and convert all real estate, property, securities, etc., into money as is specifically directed in the will of W. G. Parke, deceased"; and in the third paragraph that "the proper procedure to determine the matter [is] for the executor to file his account with assets convertible, permitting exceptions to be filed thereto, submission to an auditor on exceptions, and distribution, and let the First National Bank of Pittston claim the property and funds as trustee"; that this court has no jurisdiction to order as prayed for in these proceedings, contending that the testamentary direction that the "executors" shall convert all decedent's property into money is mandatory on the executors as such and that only as such assets are converted into money can they pass from such "executors" to the "trustees."

We have no controversy with the contention of the learned attorneys for the demurrant that the words in the will "I will and direct" are mandatory, but our interpretation is that they apply to the parties named as both executors and

trustees in the latter capacity. This interpretation is supported by the language of the will, immediately following the direction to convert, that such executors shall "divide said money into six equal shares; the net income from each of said shares to be paid" to the beneficiaries named. This latter phase of administration of the estate is essentially a trust of which the persons named as executors are the "trustees", so constituted by the will as stated in paragraph one of the petition for citation, of whom only one, the First National Bank of Pittston, Pa., now survives.

It is obvious that, by the language of the will above quoted, the testator proposed two successive methods of administration of his estate: first by the executor and second by the trustee. No authority is necessary to support the proposition that an executor as such is restricted in his administration primarily to the personal estate and even if, as contended here, real estate is to be sold and distributed by him, it is done as a trustee and the account in such case should be separate and not commingled with the administration account: Aston's Estate, 5 Wharton 228. Quoting from the opinion in that case at page 241: "As regards the fund, he acts as trustee; committing the trust to the executor, *eo nomine*, does not make him less a trustee. If the beneficiaries are properly *cestui que trusts*, the person to whom the legal estate is given for their use and benefit, by whatever name he may be called, must act as a trustee strictly, and in no other character whatever"; citing Jacobs v. Bull et al., 1 Watts 370, wherein it was decided that "When the same individual is an executor of a will and also the trustee of a fund arising out of the estate of the testator, and receives money in contemplation of law as trustee, it is demandable from him in no other character." The opinion (page 373) negatives the contention that, the money being in the hands of the executors as much as those of a trustee, payment to beneficiaries can be made without the intervention of trustees.

In Irwin's Estate, 304 Pa. 200, the principle is stated: "The use of incorrect or inaccurate language cannot defeat a testator's plain intent"; nor, we might add, defeat or evade the legal principles cited above from 5 Wharton and 1 Watts.

From the allegations of the third and fourth paragraphs of the present petition, we may well conclude that the estate is solvent, and query whether the unconverted assets recited, excepting possibly the 500 shares of the Cherry River Boom and Lumber Company, which are personalty, are not already in a legal sense in the custody and control of the petitioner as trustee and not as executor, and need no transfer from the latter to the former; but this we do not now decide in disposing of the present demurrer.

In support of our jurisdiction in the premises, section 49(e)1 of the Fiduciaries Act of June 7, 1917, P. L. 447, is cited, which reads as follows: "Whenever it shall appear, at the audit and distribution of an estate in the orphans' court, that the balance, after payment of debts, includes stocks, bonds, or other securities, which, for reasons satisfactory to said court, have not been converted by the accountants, it shall be lawful for said court to direct distribution of such assets in kind, to and among those lawfully entitled thereto, including *fiduciaries*." We have italicized the word "fiduciaries" to make more prominent its definition in section 1 of the Fiduciaries Act as including both executors and trustees. The section above quoted authorizes such distribution to such fiduciaries as well as to others "lawfully entitled", and the petitioner trustee is such a fiduciary and as such "lawfully entitled" to the assets of this estate for the purpose of administering the trust created by the will.

The only condition necessary to the orphans' court's action is "reasons satisfactory to said court." It is contended by the learned attorneys for the demur-

rant, citing section 32 (a) of the Fiduciaries Act and a number of Supreme Court decisions to the effect that such joinder of beneficiaries must be unanimous, that the consent or request of all the testamentary beneficiaries of such trust fund including the remaindermen is necessary for such action, and that it is here barred because the demurrant and several minors by guardian have not so joined.

It is clear that the provisions of section 32 (a) apply to a situation of administration and distribution to beneficiaries of a decedent's estate, adopting methods other than those provided in section 49 (e) 1, and presupposing a final settlement of the estate by the acceptance by the beneficiaries of real estate assets in lieu of their "several bequests or legacies or interest," as and in the manner provided by their testator in his will, which is entirely different from the situation at bar—a continuing trust, wherein a final settlement by the trustee is postponed for an indefinite period. We hold that this section has no application to the proceedings at bar, and for that reason will not discuss the cases cited by the learned attorneys for the demurrant, which apply only to proceedings adopted under section 32 of the act.

Considerable support for our conclusions is found in the opinion of Stewart, P. J., in Skeer's Estate, 30 Dist. R. 542, in which as here "the same parties are executors and trustees in this will," (page 544) and the will under consideration created a trust and appointed a trustee for its administration. The court there said (page 545) : "Section 49 (e) of the Fiduciaries Act was passed for just such an estate as this. It is broad enough to include 'fiduciaries,' which, by the 1st section, includes . . . 'trustees, . . . subject to the jurisdiction of the Orphans' Court'." In that case the proceedings and order were much as requested here and an order was made, amending the auditor's report, directing the distribution of unconverted personal assets, by the executor to himself as trustee, as prayed for in the petition by the executor alone. Such distribution under our local practice is also by an auditor appointed by the court and, while the mode of such distribution in kind as here prayed for can be thus made, we interpret from the prayer of the petition that the executor "file a final account . . . and cause to be distributed to . . . the sole surviving trustee" the unconverted assets in kind, that this is the very method of procedure asked for.

Although no auditor has yet been appointed, we see no reason why this petition could not be acted upon with the proper order before such appointment.

We follow the case of Brooks' Estate, 249 Pa. 66, as in accord with our reasoning and conclusions above. Whether an answer, if filed, in the present proceedings "affords reason to question in any way the justice and equity of the course adopted by the court in this regard" (page 69), will be considered at the proper time. At present at least, the absence of any allegation of appraisal and fixing valuation of the unconverted assets enumerated is no objection.

Parenthetically, we are moved to suggest that in view of the cases above cited from 5 Wharton and 1 Watts, the methods of future accounting by either trustee or executor in this estate should be carefully considered, and while we may have extended our discussion somewhat beyond the limits of the demurrer and thereby opened ourselves to criticism as having committed the offense of undue length, such course may have some influence upon the character of further litigation or help avoid it.

And now, to wit, February 6, 1933, the demurrer is overruled, and answer, if desired, to be filed by respondent or respondents within 20 days after filing this opinion and order; in default of answer filed, proceedings will follow as in such cases according to the orphans' court practice. Exceptions noted and bill sealed for the demurrant.                    From Gerritt E. Gardner, Montrose, Pa.